MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

TIMOTHY J. LUCEY (CABN 172332)
PHILIP A. GUENTERT (CABN 147374)
Assistant United States Attorneys

    150 Almaden Blvd., Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5054
    FAX: (408) 535-5066
    Timothy.lucey@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 13 - 0169 CRB |
|     Plaintiff, | ) |
| | ) UNITED STATES' OPPOSITION TO |
|   v. | ) DEFENDANT ALFRED J. VILLALOBOS' |
| | ) MOTION TO DISMISS INDICTMENT |
| ALFRED J. VILLALOBOS, et al., | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

    Defendant Alfred Villalobos' Motion to Dismiss the Indictment is without merit and should be

denied, for at least three reasons. First, much of defendant's motion is little more than argument of his

version of inferences to be drawn from the facts.  These issues will be decided by jury at trial later this

summer. Federal jurisprudence does not provide for motions for summary judgment by United States or

the defense. Second, to the extent defendant has filed a cognizable motion under Rule 7, the defendant

has not cited any precedent to support to dismissal of any counts of the Indictment. Third, the defendant

does not accurately refer to the allegations of the Indictment. The Indictment not only alleges all the

required elements of each offense, but also it provides more than adequate notice of the nature and

substance of evidence that will be introduced at trial to sustain a conviction on all three counts.  The

1  Court should deny the motion.

2  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

3        **A.      THE CRIMINAL CASE BEFORE THIS COURT**

4             **1.      Grand Jury Returns the Indictment in March 2013**

5        On March 14, 2013, the federal Grand Jury in San Francisco returned a five count Indictment

6  against Villalobos and Buenrostro related to their scheme to defraud and obstruct multiple government

7  investigations. <u>See</u> Indictment, at CR 1; <u>see also</u> Government Exhibit A, attached hereto. The Indictment

8  charges both men with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; false

9  scheme against the United States, in violation of 18 U.S.C. § 1001(a)(1); and, conspiracy to commit mail

10  and wire fraud in violation of 18 U.S.C. § 1349. The Indictment also charges Mr. Buenrostro with false

11  statement to the United States, in violation of 18 U.S.C. §1001(a)(2) and obstruction of justice, in

12  violation of 18 U.S.C. § 1505. <u>See</u> Gov. Ex. A.

13             **2.      Overview of the Indictment**

14        The Indictment alleges that Alfred Villalobos, the founder of ARVCO, a financial services firm,

15  and Fred Buenrostro, the former CEO of the California Public Employees Retirement Systems

16  ("CalPERS"), conspired to defraud the United States as well as Apollo Global Management. Mr.

17  Villalobos operated his company, ARVCO, as a placement agent business, in which he solicited public

18  pension funds to invest in the investment vehicles managed by his clients. <u>See</u> Gov. Ex. A at ¶ 3. When

19  he successfully "placed" a pension fund into his client's investment, ARVCO would be paid a pre-

20  determined fee based on the size of the investment. <u>Id</u>.

21        In August 2007, CalPERS' investment staff declined ARVCO's request to execute a document

22  known as an "Investment Disclosure" letter in connection with CalPERS' investment into a private

23  equity fund managed by Apollo Global Management. <u>Id</u>. at ¶¶ 12-14. In response, and knowing that

24  Apollo required a signed disclosure letter in order to comply with its record-keeping duties under the

25  securities laws and as a pre-condition to paying ARVCO's commission, Mr. Villalobos persuaded Mr.

26  Buenrostro, his longtime friend, to sign and backdate a letter memorializing CalPERS' receipt of the

27  terms of the contractual relationship between ARVCO and Apollo. <u>Id</u>. at ¶¶ 6-11, 25-27. Thereafter, Mr.

28  Villalobos persuaded Mr. Buenrostro to sign and date a series of blank documents that he later used to

1  create similar disclosure letters in connection with other investments by CalPERS into a series of

2  Apollo-managed funds. Id. at ¶¶ 25-27. After Apollo received these letters, ARVCO was paid $14

3  million dollars between January 2008 and October 2009. Id. at ¶ 26.

4       In July 2009, the Securities and Exchange Commission ("SEC") transmitted a Section 21(a)

5  inquiry to ARVCO seeking information about, among other things, its role as a placement agent in

6  connection with investments by public pension funds into private equity and other investment

7  vehicles. Id. at ¶ 16.  This investigation was later joined by the United States Postal Inspection Service

8  ("USPIS") and the Federal Bureau of Investigation ("FBI"). Id. at ¶¶ 19-21. Thereafter, Mr. Villalobos

9  and Mr. Buenrostro, who was removed as CalPERS' CEO on May 12, 2008 and left CalPERS to join

10 ARVCO on July 1, 2008, conspired to make to false representations and omissions in writing and under

11 oath to the SEC, USPIS, and FBI, and state entities in an attempt to deceive and trick the SEC into

12 believing the subject Investment Disclosure letters were genuine, had been duly authorized by and

13 provided to CalPERS, and they had not violated any securities laws. Id. at ¶¶ 4-5, 17-18, 22, and 27.

14      Based on sworn testimony, witness interviews, and documents, as well as other evidence, the

15 government submits that it has properly alleged, and will be able to prove beyond a reasonable doubt at

16 trial, that Mr. Villalobos and Mr. Buenrostro conspired to manufacture these letters in order to defeat the

17 SEC's regulatory scheme, defraud ARVCO, and cover up the truth about their actions in order to

18 obstruct the investigations by the SEC, USPIS, and FBI, and preserve more than $14 million in ill-gotten

19 gains.

20              **3.        Trial Schedule and Pending Motions**

21      On July 31, 2013, the Court set this matter to proceed to trial on March 3, 2014. The Court later

22 vacated that date in favor of a trial starting on April 28, 2014. At a hearing on March 24, 2014, the Court

23 vacated the April date and set this matter to proceed to trial on July 8, 2014, with the selection of the

24 jury, followed by a pre-trial conference on the afternoon of July 8th and, if necessary, July 9, 2014.

25 Thereafter, the Court has advised that opening statements and presentation of evidence will follow on

26 Monday, July 21, 2014. The Court has previously excluded time under the Speedy Trial Act (18 U.S.C.

27 § 3161 et seq.) for effective preparation through the start of trial on July 8, 2014, with approximately 68

28 days remaining on the speedy trial clock. The Court re-affirmed this schedule at a status hearing on May

19, 2014.

Later that week, on Friday, May 23, 2014, defendant Villalobos filed his present Motion to Dismiss the Indictment on Friday, May 23, 2014. On Tuesday, May 27, 2014, the Court set Mr. Villalobos' motion for a hearing on Thursday, June 12, 2014.

### B.   COLLATERAL CIVIL LITIGATION

The United States understands that the defendants before this Court are also parties to other litigation arising out of, or relating to, the subject matter of the allegations in the pending Indictment. These other matters include:

1.   People v. Villalobos, et al., the Superior Court of the State of California, in and for the County of Los Angeles (West District) (Docket No. SC107850), is a civil complaint filed by the California Attorney General on or about May 5, 2010. Both Villalobos and Buenrostro are defendants in this action. The Superior Court has scheduled a trial date in this action to begin on or about September 8, 2014, with discovery scheduled to close on or about August 8, 2014.

2.   Securities and Exchange Commission v. ARVCO Capital Research, LLC, et al., the United States District Court, in and for the District of Nevada (Docket No. 3:12 CV 00221 RCJ WGC), is a civil complaint filed by the S.E.C. on or about April 23, 2012. Both Villalobos and Buenrostro are defendants in the civil action. The District Court has not set a trial date in this action. The Court has adopted the parties' discovery schedule which provides for discovery to close on or about August 25, 2014.

3.   In re Alfred J. R. Villalobos, et al., the United States Bankruptcy Court, in and for the District of Nevada (Docket No. 3:10-BK-52248-GWZ), is a bankruptcy action filed on or about June 9, 2010. Villalobos is a debtor in that action. There are number of adversary proceedings pending in, and administered through, this bankruptcy action, including Villalobos v. Apollo Management, L.P., (3:13-AP-5017-GWZ), a civil complaint filed on April 15, 2013, alleging various civil wrongs by Apollo and its representatives in connection with the investments that

1  are subject of the present Indictment. The Court has indicated to the parties at

2  recent status hearings, that in light of the impending criminal trial in this Court, it

3  will likely defer any trial of the adversary proceedings pending the completion of

4  the criminal case.

5        4.    Villalobos, et al., v. California Public Employees' Retirement System, et al., the

6  Ninth Judicial District Court for the State of Nevada, in and for Douglas County

7  (Case No. 11-CV-0162), filed in or around May 25, 2011. The Douglas County

8  Court has stayed this action pending the outcome of this criminal case.

9  **II.  ARGUMENT: DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH**

10  **THREE SHOULD BE DENIED BECAUSE THE INDICTMENT ALLEGES MORE**

11  **THAN THE MINIMUM ESSENTIAL FACTS REQUIRED BY FED. R. CRIM. P. 7.**

12      A.    <u>The Indictment Generally</u>

13  Because the charges in the indictment allege each and every element for each offense, and

14  because additional allegations provide notice of the government's theory far in excess of the legal

15  requirements, defendant's motion to dismiss should be denied. Per Fed. R. Crim. P. 7(c)(1), the

16  indictment must be a "plain, concise, and definite written statement of the <u>essential</u> facts constituting the

17  offense charged. . . ." Id. (emphasis added). In <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th

18  Cir.), <u>cert</u>. <u>denied</u>, 474 U.S. 953 (1985), the Ninth Circuit set forth the standard by which the sufficiency

19  of an indictment should be assessed: "An indictment which tracks the words of the statute charging the

20  offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute

21  the offense." <u>Id</u>. As described <u>infra</u>, the first three counts of the Indictment, which this defendant moves

22  to dismiss, meet this test quite easily, providing both the statutory language and the government's theory

23  of how those offenses will be proved. Furthermore, there is nothing in the additional allegations, those

24  not required under Rule 7 but nonetheless supplied by the government, that should give this Court pause

25  that the conduct alleged cannot be proven, or otherwise does not constitute a violation of the law.

26  In his effort to rely on <u>United States v. Cecil</u>, 608 F.2d 1294 (9th Cir. 1979), the sole case he

27  cites finding an indictment to be insufficient on its face, the defendant makes a series of misstatements

28  about what is actually contained within the instant Indictment. As to Counts One and Three, the

1    defendant claims that the "indictment does nothing more than track the language of the statutes." Def.

2    Mot. at 7. This is patently false. The defendant's own summary of the allegations in the indictment

3    comprises twenty-seven paragraphs of his brief. In Count One, there are two paragraphs describing the

4    manner and means of the conspiracy, and nineteen overt acts in furtherance set forth by date, as well as

5    twenty-two paragraphs containing relevant factual background to the offense. Gov. Ex. A at pp. 6-9.

6         He further claims that the allegations "do not inform Mr. Villalobos of the alleged goal of either

7    fraud scheme." Def. Mot. at 8. This is also false. According to Count One, defendants "created a series

8    of fraudulent Investor Disclosure letters in order to satisfy Apollo's record-keeping obligations under the

9    securities laws and regulations and to ensure ARVCO's receipt of commission fees from Apollo," with

10   further means described later in the count. Gov. Ex. A at p. 6. Quite succinctly and clearly this states the

11   goals of the conspiracy and the government's theory of its case. Count Three incorporates the same

12   allegation. Gov. Ex. A at p. 10, ¶ 32.

13        Likewise, defendant's additional claims that the Indictment fails to address "what was planned"

14   and how those goals were "obtained through deception or falsity" are also incorrect—even if the law

15   required that detail, and that reasoning, to be set forth in the indictment, which it does not. A legally-

16   sufficient indictment does not need to explain all the factual evidence to be proved at trial. See United

17   States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993), citing United States v. Markee, 425 F.2d 1043,

18   1047 (9th Cir.), cert. denied, 400 U.S. 847 (1970).

19        The indictment in Cecil differed dramatically from that here. Rejecting a claim that a

20   "conclusory" indictment was fatally flawed, the Ninth Circuit recently distinguished Cecil by noting

21   that Cecil involved a "'rather barren' indictment that tracked the text of the relevant conspiracy statutes

22   and made 'only two specific allegations concerning the conspiracies'—the location of the conspiracies

23   and the names of co-conspirators." United States v. Livingston, 725 F.2d 1141, 1147 (9th Cir. 2013)

24   (affirming mail-fraud indictment that described scheme in "constitutionally adequate factual detail"). (In

25   fact, as to place, the Cecil indictment named an entire country, a state, and "elsewhere." Cecil, supra.)

26   And, as the Ninth Circuit earlier noted, the indictment in Cecil was defective because it "did not place

27   the conspiracies in any time frame whatsoever." United States v. Tavelman, 650 F.2d 1133, 1137 (9th

28   Cir. 1981) (rejecting claim on appeal that defendant failed to allege "essential facts"). Accord United

1  States v. Garrett, 680 F.2d 650, 651 (9th Cir. 1982). The government now addresses the defendant's

2  arguments and the government's position as to each count, beginning with Count Three.

3        B.      Count Three

4        Count Three charges the defendants with attempting and conspiring to commit mail and wire

5  fraud in violation of 18 U.S.C. § 1349 by creating, and transmitting interstate, the fraudulent investor

6  disclosure letters demanded by Apollo, per its obligations under securities laws, before it would pay

7  ARVCO for procuring CalPERS investments in Apollo funds. According to the standards developed in

8  the context of section 371 conspiracies, the amount of information contained in the ten-page information

9  should be more than sufficient to defeat a motion to dismiss. Setting aside the requirement to plead an

10  overt act, which does not apply to section 1349, a conspiracy charge is adequate if it alleges an

11  agreement and the unlawful object to which that agreement is directed. United States v. Chinasa, 489

12  Fed.Appx. 682, 685-86 (4th Cir. 2012); United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). One

13  appellate court said:

14        Such an indictment gives defense counsel adequate notice of the charges and is sufficient to
          allow defendants to plead it in another prosecution. . . . In fact, an indictment that merely tracks
15        the statutory language is ordinarily valid: 'It is generally sufficient that an indictment set forth
          the offense in the words of the statute itself, as long as "those words of themselves fully, directly,
16        and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to
17        constitute the offense intended to be punished."' Hamling v. United States, 418 U.S. 87, 117
          (1974). . . . In sum, it is incorrect to require, as [defendant] appears to suggest, that the
18        indictment must enumerate every possible legal and factual theory of defendants' guilt.

19  United States v. Am. Waste Fibers Co., Inc., 809 F.2d 1044, 1046-47 (4th Cir. 1987) (affirming

20  sufficiency of the indictment for a section 371 conspiracy).

21        Defendant's primary concern appears to be that the government will not be able to prove its

22  case. Cf. Def. Mot. at 1 (calling upon the Court "to dismiss these baseless charges") (emphasis added).

23  Most of the cases he cites address the sufficiency of evidence, not the charging instrument. For example,

24  at Def. Mot. at 9, defendant supports an argument about how a section 1349 attempt should be pleaded

25  with a case, United States v. Nelson, 66 F.3d 1955 (9th Cir. 1995), that addresses what evidence is

26  required to convict. Throughout the brief, defendant takes aim at every element of the offense charged in

27  Count Three, so the government has tried to arrange those arguments, and its responses, accordingly.

28  ////

1        1.   <u>Conspiracy</u>

2        Defendant claims that "[t]here is no allegation here that the conspiracy was an explicit agreement

3    between Mr. Villalobos and Mr. Buenrostro." Def. Mot. at 9. As defendant concedes, the government

4    does not have to prove an explicit agreement to convict—so it certainly does not have to allege

5    one. <u>See</u> <u>United States v. Boone</u>, 951 F.2d 1526, 1543 (9th Cir. 1991) ("For a conspiracy conviction,

6    'the prosecution need not show the agreement to have been explicit. An implicit agreement may be

7    inferred from the facts and circumstances of the case," quoting <u>United States v. Hernandez</u>, 876 F.2d

8    774, 777 (9th Cir. 1989)). From the standpoint of the sufficiency of an indictment—the real issue here—

9    the word "agreement" need not appear in an indictment at all:

10        Appellants . . . attack the indictment in that it does not state the essential facts constituting the
         offense charged, but merely the legal conclusions of the pleader. The indictment is not defective
11       in that regard. It charges that the defendants 'conspired' (i.e., 'agreed') to defraud the
         government (unlawful object) by attempting corruptly to influence and prevent the Bureau of
12       Internal Revenue from proceeding against Gertrude Jenkins (the means). This indictment gives
         the gist of the offense of conspiracy, the agreement to commit an unlawful act and the means by
13       which that agreement was achieved. <u>United States v. Falcone</u>, 311 U.S. 205, 210 (1940). 'The
         particularity of time, place, circumstances, causes, etc., in stating the manner and means of
14       effecting the object of the conspiracy for which (appellants) contend, is not essential to an
         indictment.' <u>Glasser v. United States</u>, 315 U.S. 60, 66 (1942) (superseded on other grounds).
15

16   <u>Schino v. United States</u>, 209 F.2d 67, 69 (9th Cir. 1954).

17       Defendant later claims that this Indictment does not "state[] facts upon which an agreement to

18   defraud anyone can be <u>inferred</u> between Mr. Villalobos and Mr. Buenrostro." Def. Mot. at 15. As set

19   forth above, the language of the indictment, which includes allegations that they conspired to commit

20   mail and wire fraud as described in 18 U.S.C. § 1349, is more than sufficient under Fed. R. Crim. P. 7.

21   Defendant's concern seems to be that the government will fail to meet its burden of proof. "There is no

22   summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of

23   sufficiency of the evidence." <u>United States v. Critzer</u>, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam),

24   quoted in <u>U.S. v. Blanton</u>, 476 F.3d 767, 771 (9th Cir. 2007) and <u>U.S. v. Jensen</u>, 93 F.3d 667, 669 (9th

25   Cir. 1996).

26        2.   <u>Fraud</u>

27       "Since conspiracy is the gist of the crime, the indictment need not state the object of the

28   conspiracy with the detail that would be required in an indictment for committing the substantive

offense." <u>Lane</u>, <u>supra</u> at 1380, <u>citing</u>, <u>e.g.</u>, <u>United States v. Tavelman</u>, 650 F.2d 1133, 1137 (9th Cir.), <u>cert</u>. <u>denied</u>, 455 U.S. 939 (1982). Count Three far exceeds this relaxed standard in describing the fraud that is the object of the conspiracy.

Defendant complains that the allegations about the letters "contain no specific facts showing the Investor Disclosure letters were fraudulent." Def. Mot. at 14. Whether or not this is required of a sufficient indictment, it is certainly not true of this Indictment. It quite clearly alleges that the required letters were backdated and/or signed in blank by defendants, by implication without the knowledge of CalPERS or Apollo, after CalPERS notified defendants that the first of these letters would not be executed at all. Further, the defendants' criminal conduct included affirmative misrepresentations and subsequent concealment of how they created the letters, and the Indictment specifies in what manner the defendants' statements and testimony were false. Defendant complains at length that these allegations should not constitute a fraud, Def. Mot. at 10, but the Indictment makes clear that the defendants presented the letters to Apollo as authentic, authorized, genuine executions of acknowledgments by CalPERS as to a series of investments in different funds between August 2007 and June 2008, and continued to misrepresent them as such when asked by government officials and under oath. ARVCO, on behalf of which the defendants acted, obtained property as a result—$14 million—and was scheduled to be paid millions more because Apollo had conditioned payment on such letters and relied upon the fraudulent versions. Gov. Ex. A at ¶¶ 9, 11, and 26. In addition, the Indictment alleges that the fraudulent letters were transmitted by interstate wire and carrier. Whether or not the government was required to plead all of this additional detail, a proposition for which defendant offers no authority, the indictment describes in detail an offense entirely consistent with the classic form of a tangible-property fraud. There can be no possible question remaining about what the defendant is accused of, and whether that accusation constitutes a federal offense.

### 3.   Materiality

Much of what the defendant faults in the Indictment about Count Three concerns the issue of the materiality of the letters. Those arguments should be made to the jury. The claim by defendant that "Apollo's purpose of requiring and keeping the letters was satisfied," Def. Mot. at 19, is one of fact, and will be contradicted by the evidence at trial. Even if the evidence at trial shows, as defendant claims now

1    as proven fact, that the requirement of the letters was a "choice" of Apollo's, that does not undermine

2    the allegations of a conspiracy to commit fraud. No statute or case requires the government to allege in

3    the indictment (or prove) that CalPERS was unaware of the information presented in the letters that

4    ARVCO was trying to get CalPERS to sign. See Def. Mot. at 20-22. The point is that Apollo, an entity

5    regulated by securities laws, required an authentic executed disclosure and to maintain them in its

6    official books and records, and defendants attempted to trick Apollo officials into believing that that was

7    what they had in the fraudulent documents.

8           Finally, his argument notwithstanding, defendant's own role in the fraud is pleaded in some

9    detail, certainly to the degree necessary to provide him with notice of the offense with which he has

10   been charged. Defendant gives no legal basis for demanding that the Indictment allege, inter alia, his

11   understanding of defendant Buenrostro's authority to execute the fraudulent documents (Def. Mot. at

12   22); a further specification of the false statements contained within the particular overt act charged at ¶

13   27(n) (id.); or that he was required to register with the SEC prior to 2009 (id.). As set forth above, a

14   legally-sufficient indictment does not need to explain all the factual evidence to be proved at

15   trial. Blinder, supra.

16          4.    Intent

17          One of defendant's concerns seems to be the means by which the government will prove intent

18   for a conspiracy that occurs against a regulatory backdrop. The defendant argues that the "indictment in

19   this case does not allege the defendants were involved with subject matter that was fundamentally or

20   obviously illegal." Def. Mot. at 10. He states that, as a result, one cannot "infer" illegal agreement or

21   intent from the conduct alleged. Id. Even if one could plausibly make such a claim about lying to the

22   government and under oath for the purpose of obtaining money, the only possible time for applying such

23   a concept would be when the Court reviews the government's evidence in deciding if it was sufficient to

24   prove the elements of the offenses, including the required mens rea, beyond a reasonable doubt. At best,

25   this issue is joined prematurely, as discussed above.

26          For the aforementioned reasons, Count Three is properly pleaded, and the defendant's motion to

27   dismiss as to that count should be denied.

28          C.    Count One

1    In 1924, the Supreme Court first stated that section 371 prohibits a conspiracy to obstruct lawful

2    governmental functions, and not just a conspiracy to cheat the government of money or

3    property. Hammerschmidt v. United States, 265 U.S. 182, 188 (1924). Generally, to convict of such an

4    offense, the government must prove beyond a reasonable doubt that (1) the defendant entered into an

5    agreement, (2) to obstruct a lawful function of the Government, (3) by deceitful or dishonest means, and

6    (4) committed at least one overt act in furtherance of the conspiracy. United States v. Ballistrea, 101

7    F.3d 827, 832 (2d Cir. 1996), citing United States v. Caldwell, 989 F.3d 1056, 1059 (9th Cir. 1993).

8    It is not true, as claimed by the defendant, that the statute further "requires an intent to, through

9    deceptive means, interfere with the government to the extent that it undermines the government's

10   valuable services." Def. Mot. at 23 (emphasis added). None of the cases cited by the defendant stand for

11   this proposition. It may be that the crime in United States v. Barnow, 239 U.S. 74 (1915), "diminished"

12   the "value" of certain government reports, but neither that case—which concerns another statute—nor

13   any other requires the conspiracy to achieve some particular quantum of harm. See United States v.

14   Jiminez Recio, 537 U.S. 270, 274-275 (2003) (criminal agreements may be punished whether or not the

15   substantive crime ensues, citing Salinas v. United States, 522 U.S. 52, 65 (1997)).

16   Of course, the motion here is, or at least should be, one that addresses the sufficiency of

17   allegations, not evidence. A conspiracy to defraud charge is not unconstitutionally vague when the

18   indictment alleges with particularity "the essential nature of the alleged fraud" and identifies the specific

19   conduct which furthered the conspiracy. United States v. Cueto, 151 F.3d 620, 636 (7th Cir.

20   1998); United States v. Helmsley, 941 F.2d 71, 90-91 (2d Cir. 1991) ("What is required is only that an

21   indictment charging a defraud clause conspiracy set forth with precision 'the essential nature of the

22   alleged fraud.'"); United States v. Rankin, 870 F.2d 109, 113-14 (3d Cir. 1989) (holding that an

23   indictment alleging that the defendants intended to impair the lawful function of the United States

24   sufficiently charged a conspiracy to defraud the United States).

25   The indictment in this case clears that hurdle with room to spare. As in United States v. Mohney,

26   949 F.2d 899, 904 (6th Cir. 1991), affirming the denial of a motion to dismiss an indictment as

27   insufficient, the charging instrument here includes (1) the name of the agency[s] impeded [¶¶ 20, 24-25],

28   (2) the functions of the agency[s] that were impeded [¶ 16-22, 24]; (3) the means used to impede the

agency [¶¶ 24-27]; and (4) the identities of those charged with impeding the agency [¶ 24]. Id.

The charge in Count One resembles, not the indictment in Cecil, as defendant would have it, but that which was upheld on the government's appeal of a motion to dismiss in United States v. Barker Steel Co., Inc., 985 F.2d 1123 (1st Cir. 1993). There, the court stated that "an information is sufficient when allegations are made in the language of the statute as long as the core facts of the criminality charged are also included," id. at 1126, and that the test for sufficiency is "'not whether, in hindsight, the indictment or information could have been more complete, . . . but rather whether it fairly identifies and describes the offense," id., citing United States v. Allard, 864 F.2d 248, 250 (1st Cir. 1989). The court added that a sufficient charge for a conspiracy to defraud must allege an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement. See id., citing United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992), cert. denied, 506 U.S. 817 (1992). Furthermore, the objective of the agreement is unlawful if it is "for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government." Dennis v. United States, 384 U.S. 855, 861 (1966).

In the case of Barker Steel Co., the court found sufficient the government's use of the language of section 371 to allege the defendants' conspiracy to defraud, as follows:

> [T]he defendants herein, BARKER STEEL CO., INC. and ROBERT B. BRACK, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with others, known and unknown, to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental function of various departments and agencies of the United States, including particularly USDOT, EPA and GSA, in the implementation, execution and administration of their respective MBE programs.

Barker Steel Co., Inc., supra, at 1128.[1]

---

[1] The court went on to note that:

> The Information also includes detailed factual allegations to substantiate the cursory statutory allegations. . . . In thirteen pages containing forty-eight paragraphs, the Information details actions by which the defendants, Rusco and others accomplished their objective to obtain MBE contracts for the benefit of the defendants. The allegations show that the defendants were well aware of the purpose of the MBE programs, certification requirements, goals and set aside contracts, and that any reasonably intelligent person in the defendants' situation should have known that their conspiracy could have criminal consequences. Taken as a whole, the Information sufficiently alleges fraudulent conduct by the defendants and their co-conspirators to impair, defeat, or obstruct the function of the MBE programs involved in this case.

Finally, it is clear that the allegations of defendant's conduct constitute a conspiracy to defraud the United States on their face. Cf. Dennis, supra at 860-61 ("In the present case, it is alleged that petitioners, unable to secure for their union the benefit of Labor Board process except by submitting non-Communist affidavits, coldly and deliberately concocted a fraudulent scheme; and in furtherance of that scheme, some of the petitioners did in fact submit false affidavits and the union did thereafter use the Labor Board facilities made available to them. This Court's decisions foreclose the argument that these allegations do not properly charge a conspiracy to defraud the United States.")

Caldwell, supra, cited by defendant, reversed a conviction for obstructing the lawful functions of the IRS because of jury instructions that omitted the third element, concerning deceitful means, described above. It does not address the sufficiency of the indictment. Nevertheless, the government notes that the Indictment in the instant case specifically alleges this element in ¶ 24. The deceitful conduct is further detailed in the remainder of the Count, including the fact that the letters produced by defendant were fraudulent, with false dates, and that the defendants covered up and lied about their conduct to the government, by means including falsehoods in a voluntary interview by Buenrostro and under oath in a deposition of Villalobos. Caldwell provides no basis for relief for the movant here.

The further attacks by defendant on the charge in Count One are factual rather than legal, and thus not cognizable in a motion to dismiss the indictment. He states repeatedly in his motion that whatever "irregularities" attended the creation of the letters, and whatever was said later to cover up their inauthenticity, that the information contained in the letters was accurate. See, e.g., Def. Mot. at 24. Although the charge in Count One does not depend on it, the government expects the evidence at trial to contradict these assertions by the defendant.

For the aforementioned reasons, Count Two properly pleads the offense of conspiracy to defraud the government, and the defendant's motion to dismiss that count should be denied.

D.     Count Two

Defendant's argument concerning Count Two is found on the last page of his brief. He states that the government was required to, but failed to, "allege the materiality of documents which were only

Id. at 1128, 1136.

1   internal records of Apollo's and not designed to go to the government." Def. Mot. at 25 (emphasis

2   added). By the defendant's own recapitulation of the 18 U.S.C. § 1001(a)(1), what the government is

3   required to prove, and thus allege, is the materiality of <u>facts</u> within the jurisdiction of agencies of the

4   United States. And this is what the indictment does allege—specifically, that the defendants concealed

5   material facts about how the Investor Disclosure letters were created, executed, and transmitted. Gov .

6   Ex. A at p. 10, ¶ 31.

7       Defendant's assertion that the government "failed to allege the materiality of [the investor

8   disclosure] documents," Def. Mot. at 25, is inapt, at best, as well as inapposite. It bears repeating that the

9   indictment describes the significance of the letters themselves at length, first at ¶¶ 7-9, which includes

10  allegations that Apollo required of its placement agents that they obtain these letters "in order to comply

11  with securities laws and regulations" applicable to Apollo because of its status as a registered investment

12  advisor, and that Apollo "maintained these Investor Disclosure letters provided by the placement agents

13  in its files to comply with SEC's requirement that investment advisors keep and maintain accurate books

14  and records, among other reasons." According to ¶¶ 15-18, ARVCO made a representation to the SEC

15  that it had obtained these letters, and provided copies of the letters themselves, as they were required to

16  do as a matter of federal law. The FBI, the USPIS, and the SEC then investigated ARVCO's response to

17  the SEC. Gov Ex. A at ¶¶ 19-22. There follows in the indictment a paragraph devoted entirely to the

18  subject of what was material to their investigation:

19      a.   When, and the manner and means by which, someone signed Investor Disclosure letters
             on behalf of CalPERS in connection with CalPERS' investments in certain Apollo-
20           managed funds;

21      b.   Whether and when anyone provided any of the signed Investor Disclosure letters to
             CalPERS' intra-office mail system for filing in its investment records database; and,
22      c.   Whether and to what an ARVCO representative asked anyone to sign Investor Disclosure
             letters that were missing substantive terms.
23

24  Gov. Ex. A at ¶ 21.

25      Defendant's focus on the significance of the letters themselves, as viewed from the standpoint of

26  the securities regulatory scheme, is misplaced. <u>United States v. Peterson</u>, 538 F.3d 1064, 1073, n. 5 (9th

27  Cir. 2008) (". . . [T]he materiality requirement in false statement cases does not turn on whether the

28

1   agency's regulatory distinctions are wise or consistent as a matter of policy; it contains no embedded

2   question of substantive reasonableness"). The first question is really whether the issue of the disclosure

3   letters, suspected of being fraudulent, fell within the jurisdiction of the SEC, the FBI, and the USPIS. It

4   clearly did. See Gov. Ex. A at ¶¶ 7, 15-22; Def. Mot. at 10, n. 5 ("It is acknowledged that these agencies

5   had authority to conduct investigations about, and to oversee, securities trades in the United

6   States"); cf. United States v. Rodgers, 466 U.S. 475, 479 (1984) ("Section 1001 expressly embraces

7   false statements made 'in any matter within the jurisdiction of any department or agency of the United

8   States." . . . A criminal investigation surely falls within the meaning of 'any matter,' and the FBI and the

9   Secret Service equally surely qualify as 'department[s] or agenc[ies] of the United States.'")

10          Once the question of jurisdiction is settled, the question of materiality of the falsification of

11   particular facts, whether they were facts in or about the letters, must be addressed—under a test that is

12   quite liberal. Which false facts were material to the responsibilities and subsequent investigations of

13   these agencies? Those that had "a natural tendency to influence, or [were] capable of influencing, the

14   decision of" the decision-making body. Kungys v. United States, 485 U.S. 759, 770

15   (1988); accord United States v. Serv. Deli Inc., 151 F.3d 938, 940-42 (9th Cir. 1998). This would

16   certainly include the particular misrepresentations alleged in the indictment here, which memorialize

17   circumstances and obligations of parties to a securities transaction. The fact that the letters were

18   intended to address a regulatory issue, as alleged in the indictment, makes it all the more likely a

19   misrepresentation contained in them, or about them, is material. See Peterson, supra at 1073 ("the

20   requirements were established rules and regulations of HUD - a clear indication that the statements in

21   the gift letters as to the source of the down payment were predictably capable of influencing HUD's

22   decisions"). Ultimately, the very fact that defendants went to the trouble and risk of faking the letters,

23   and lying about them subsequently, demonstrates materiality—certainly for the purpose of passing

24   muster under standards applicable to a motion to dismiss the indictment.

25          Defendant's arguments notwithstanding, e.g., Def. Mot. at 22, n. 12, the materiality of the

26   fraudulent documents, and related misrepresentations, is not affected by whether or not they were aimed

27   directly at the government agencies. For the purposes of a section 1001 conviction, the false document

28   "need not be [provided] directly to the government agency; it is only necessary that the statement relate

to a matter in which a federal agency has power to act." <u>United States v. Green</u>, 745 F.2d 1205, 1208 (9th Cir. 1984) (action against preparer of false test reports which were reviewed by the Nuclear Regulatory Commission).

The allegations about defendants' scheme to falsify compliance with regulatory requirements, if proven at trial, would constitute an offense under section 1001(a)(1). Presumably, after the government rests its case-in-chief, the defendant will want to challenge the government's proof of materiality. In the meantime, his fanciful claims notwithstanding, the materiality to the government of the facts surrounding the disclosure letters is stated quite obviously in the indictment, in detail above and beyond the required statutory language. His motion to dismiss as to Count Two should be denied.

## III.    CONCLUSION

For all the foregoing reasons, defendants' Motion to Dismiss the Indictment should be denied in its entirety.


DATED: June 5, 2014                              Respectfully submitted,

                                                 MELINDA HAAG
                                                 United States Attorney


                                                 __/s/_____
                                                 TIMOTHY J. LUCEY
                                                 PHILIP J. GUENTERT
                                                 Assistant United States Attorneys