# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

FILED
AUG -7 P 1: 38
RICHARD W. WIEKING
U.S. DISTRICT COURT
N.D. CAL.

UNITED STATES OF AMERICA,

V.

# CR 13 169

### ALFRED J. VILLALOBOS

# CRB

### DEFENDANT(S).

---

# SUPERSEDING INDICTMENT

COUNT ONE: 18 U.S.C. § 371 – Conspiracy to Commit Bribery and Honest
Services Fraud and to Defraud the United States
COUNT TWO: 18 U.S.C. § 1001(a)(1) – False Scheme Against the United States;
and
COUNT THREE: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire
Fraud
Forfeiture Allegations as to Counts One and Three

---

A true bill.

_Nancy J. Peterson_
Foreman

Filed in open court this ___7th___ day of

___August, 2014___

_Amy Jaul_
Clerk

Bail, $ __NO Secure required__

Nathanael Cousins
United States Magistrate Judge

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

### OFFENSE CHARGED

COUNT ONE: 18 U.S.C. § 371 – Conspiracy to Commit Bribery and Honest Services Fraud and to Defraud the United States
COUNT TWO: 18 U.S.C. § 1001(a)(1) – False Scheme Against the United States; and
COUNT THREE: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud
Forfeiture Allegations as to Counts One and Three ☐

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   Counts One & Two: Five years imprisonment; $250,000 fine or twice the amount of gain or loss, whichever is greater; three years supervised release; and $100 special assessment. Count Three: Twenty years imprisonment; $250,000 fine or twice the amount of gain or loss, whichever is greater; three years supervised release; and $100 special assessment ☐

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

1: 50

### DEFENDANT - U.S

▶ ALFRED J. VILLALOBOS

DISTRICT COURT NUMBER

CR 13 – 0169 CRB

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Jason Crowe, USPIS Postal Inspector/S/A Ethan Quinn, FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE   } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant   } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under   }

Name and Office of Person Furnishing Information on this form

☐ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)

### DEFENDANT

**IS NOT IN CUSTODY**
  Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
      Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction   }
6) ☐ Awaiting trial on other charges   }   ☐ Federal ☐ State
      If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   If "Yes"
been filed?    ☐ No    give date filed
DATE OF        Month/Day/Year
ARREST ▶
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED   Month/Day/Year
TO U.S. CUSTODY ▶

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:

1   MELINDA HAAG (CABN 132612)
    United States Attorney
2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12

13  UNITED STATES OF AMERICA,              )   No.    CR 13 – 0169 CRB
                                           )
14        Plaintiff,                       )   VIOLATIONS:
                                           )
15        v.                               )   18 U.S.C. § 371 – Conspiracy to Commit Bribery and
                                           )   Honest Services Fraud, and to Defraud the United
16  ALFRED J. VILLALOBOS,                  )   States; 18 U.S.C. § 1001(a)(1) – False Scheme
                                           )   Against the United States; 18 U.S.C. § 1349 –
17        Defendant.                       )   Conspiracy to Commit Mail Fraud and Wire Fraud;
                                           )   18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) –
18                                         )   Forfeiture of Fraud Proceeds
                                           )
19                                         )   (SAN FRANCISCO VENUE)
                                           )
20  ─────────────────────────────────

21              S U P E R S E D I N G   I N D I C T M E N T

22  The Grand Jury charges:

23                    Introductory Allegations

24  At all times relevant to this Superseding Indictment, unless otherwise specified:

25                    CalPERS and Buenrostro

26       1.      The California Public Employees Retirement System ("CalPERS") was an entity created

27  by the State of California that, among other duties and obligations, operated the pension benefit system

28  and health care benefit programs for current and former employees of the State of California and other

    SUPERSEDING INDICTMENT                      1

public entities in California.  CalPERS was headquartered in Sacramento, California, and maintained offices throughout California, including within the Northern District of California.  CalPERS provided retirement and health care benefits, among other services, to residents in the Northern District of California and other beneficiaries.  CalPERS received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, or other form of federal assistance during each and every three hundred and sixty-five (365) day period from in or about June 2006 and continuing through in or about June 30, 2008.

2.      CalPERS Board of Administration (the "CalPERS Board") was a statutory body vested with the exclusive authority to manage, control, and direct the administration of CalPERS' operations, including the investment of CalPERS' assets and the provision of health care benefits programs.  Members of the CalPERS Board are obligated by statute to discharge their duties as fiduciaries solely in the interest of CalPERS' members and their beneficiaries.

3.      The CalPERS Board appointed the Chief Executive Officer ("CEO") of CalPERS.  The CEO was the highest-ranking officer within CalPERS.  The CEO derived his or her powers to oversee the day-to-day administration of CalPERS' operations and employees by means of a written delegation of authority from the CalPERS Board that detailed a fiduciary duty to act solely in the best interest of CalPERS' members and their beneficiaries.

4.      FEDERICO R. BUENROSTRO, JR., aka Fred Buenrostro ("BUENROSTRO"), occupied a position of trust at CalPERS, serving as the CEO of CalPERS from on or about December 1, 2002, until on or about May 12, 2008. As CEO, defendant BUENROSTRO was responsible for, among other things, the administration of CalPERS' financial affairs, including the operations of CalPERS' investment staff and was entrusted with, among other things, confidential, internal, and proprietary information relating to CalPERS' ongoing investments and prospective investment decisions in connection with CalPERS' administration of billions of dollars in assets.

5.      Based on his position as an officer and employee of CalPERS, BUENROSTRO owed a duty of loyalty to the State of California, and its citizens, free from deceit, self-enrichment, concealment, and conflict between his personal interests and the interests of the State of California.  Specifically, as CEO of CalPERS, BUENROSTRO owed the State of California and its citizens a duty to, among other

1  things:  (a) refrain from using his official position or office to obtain personal benefit for himself or a

2  family member, California Penal Code § 68 and California Code of Regulations, Title 2, § 558; (b)

3  refrain from soliciting or receiving a thing of value for himself or a family member for the purpose of

4  influencing official action, pursuant to California Penal Code § 68 and California Code of Regulations,

5  Title 2, § 558; (c) maintain the confidentiality of information relating to the operations of CalPERS,

6  pursuant to California Government Code § 1098 and California Code of Regulations, Title 2, § 558; (d)

7  refrain from engaging in any employment, activity, and enterprise that was clearly inconsistent,

8  incompatible, in conflict with, or inimical to his or her duties as a state officer or employee, pursuant to

9  California Government Code § 19990 and California Code of Regulations, Title 2, § 558; and (e)

10  disclose, and not conceal, personal financial interests, the nature and amount of income received, and

11  other material financial information, pursuant to California Government Code § 19990 and California

12  Code of Regulations, Title 2, § 558.

13  <center>ARVCO and Villalobos</center>

14      6.      ARVCO Capital Research, LLC was a limited liability company organized and existing

15  under the laws of the State of Nevada, with its principal place of business in Stateline, Nevada.  ARVCO

16  also did business under the names "ARVCO Capital Research," "ARVCO Financial Ventures, LLC,"

17  and "Capital Formation Partners."  ARVCO Capital Research, LLC, ARVCO Capital Research,

18  ARVCO Financial Ventures, LLC, and Capital Formation Partners will be referred to collectively

19  hereinafter as "ARVCO."

20      7.      ALFRED J. VILLALOBOS ("VILLALOBOS") was the founder, managing director, and

21  majority shareholder for ARVCO and all of its predecessor entities.

22      8.      Prior to founding ARVCO, VILLALOBOS had been appointed to the Board of

23  Administration of CalPERS, on which he served from approximately 1992 to approximately 1995.

24      9.      VILLALOBOS operated ARVCO as a placement agent that solicited investments by

25  public pension funds into private equity funds.  ARVCO was typically paid an agreed-upon fee based on

26  the percentage of the total dollar amount invested by the public pension fund.

27      10.     In or around March 2007, Apollo Global Management ("Apollo"), a private equity firm

28  based in New York, New York, that had previously used ARVCO's services in connection with prior

1  investments by CalPERS into its funds, registered with the Securities and Exchange Commission

2  ("SEC") as an investment advisor. Thereafter, in order to comply with securities laws and regulations,

3  Apollo required all of its placement agents to obtain a signed "Investor Disclosure" letter from any

4  investor that they successfully placed in an Apollo-managed fund. Among other purposes, the Investor

5  Disclosure letters memorialized the fact that Apollo investors had been made aware of the relationship

6  between the placement agent and Apollo, including the fees to be paid to the placement agent based on

7  the nature and size of the investor's commitment to a given Apollo fund. Apollo maintained these

8  Investor Disclosure letters provided by the placement agents in its files to comply with the SEC's

9  requirement that investment advisors keep and maintain accurate books and records, among other

10  reasons.

11       11.    Between approximately August 2007 and approximately April 2008, CalPERS

12  invested approximately $3 billion into funds managed by Apollo, identified as: Fund VII, Apollo

13  Investment Europe ("AIE"), Special Opportunities Managed Account ("SOMA"), European Principal

14  Loan Fund ("EPF"), and Credit Opportunity Fund ("COF") (referred to collectively hereinafter as

15  "Apollo-managed funds").

16       12.    ARVCO acted as the placement agent on behalf of Apollo in connection with each of

17  these investments by CalPERS. In each instance, Apollo required ARVCO to obtain a written Investor

18  Disclosure letter from CalPERS prior to paying ARVCO any fees for its efforts in securing CalPERS'

19  investments in each of the subject Apollo-managed funds, citing, among other reasons, Apollo's

20  obligations under the Investment Advisers Act of 1940. All references to Investor Disclosure letters

21  throughout this Superseding Indictment refer collectively to the letters relating to CalPERS'

22  investments, placed by ARVCO, into Fund VII, AIE, SOMA, EPF, and COF.

23       13.    On or about August 23, 2007, in response to a request from ARVCO's General Counsel,

24  a CalPERS Senior Portfolio Manager advised ARVCO that CalPERS would not sign the proposed

25  Investor Disclosure letter and referred any further questions regarding the matter to CalPERS' in-house

26  counsel. ARVCO's General Counsel contacted CalPERS' in-house counsel, who confirmed that

27  CalPERS would not execute the requested Investor Disclosure letter. Shortly thereafter, ARVCO's

28  General Counsel informed VILLALOBOS that CalPERS would not execute the requested Investor

SUPERSEDING INDICTMENT     4

1  Disclosure letter.

2                           United States' Investigation of ARVCO

3       14.    On or about May 9, 2009, ARVCO registered with the SEC as a broker-dealer.

4  As a registered broker-dealer, ARVCO was thereafter required, among other duties and obligations, to

5  make and to keep accurate books and records detailing, among other things, its securities transactions,

6  and to furnish copies of those records and other information to the SEC upon request.

7       15.    On or about July 17, 2009, the SEC sent a Section 21(a) inquiry to ARVCO

8  seeking information about, among other things, its role as a placement agent in connection with

9  investments by public pension funds into private equity and other investment vehicles.

10      16.    On or about May 18, 2010, the United States Postal Inspection Service ("USPIS")

11 opened a criminal investigation of ARVCO into possible mail fraud, wire fraud, and related charges.

12 The focus of the inquiry included ARVCO's response to the SEC regarding its role as a placement agent

13 in connection with investments made by CalPERS in private equity funds, the circumstances

14 surrounding ARVCO's receipt of commission fees from Apollo, and Investor Disclosure letters relating

15 to CalPERS' investments into Apollo-managed funds in 2007 and 2008.

16      17.    On or about June 1, 2010, the Federal Bureau of Investigation ("FBI") opened a criminal

17 investigation into substantially similar matters. Shortly thereafter, the USPIS and FBI agreed to

18 investigate jointly the matters relating to ARVCO and its participation in CalPERS' investments into

19 Apollo-managed funds.

20      18.    During the course of the investigations conducted by the SEC, the USPIS, and the

21 FBI, the following matters, among others, were material to each:

22          a.   The existence of a financial relationship between VILLALOBOS and
               BUENROSTRO;

23
            b.   When, and the manner and means by which, someone signed Investor Disclosure
24             letters on behalf of CalPERS in connection with CalPERS' investments in certain
               Apollo-managed funds;
25
            c.   Whether and when anyone provided any of the signed Investor Disclosure letters
26             to CalPERS' intra-office mail system for filing in its investment records database;
               and,
27
            d.   Whether and to what extent an ARVCO representative asked anyone to sign
28             Investor Disclosure letters that were missing substantive terms.

19.     On or about February 3, 2012, BUENROSTRO submitted to a voluntary

interview in San Francisco, California, with the SEC, the USPIS, the FBI, and United States Attorney's

Office ("USAO") in connection with their ongoing investigations.  BUENROSTRO responded to

questions about his role in, and knowledge of, the creation, execution, and transmittal of the Investor

Disclosure letters relating to CalPERS' investments into Apollo-managed funds in 2007 and 2008, as

well as the nature of his financial relationship with VILLALOBOS.

COUNT ONE:  (18 U.S.C. § 371 – Conspiracy to Commit Bribery and Honest Services Fraud
                          and to Defraud the United States)

20.     Beginning no later than 2005 and continuing to at least December 2013, both dates being

approximate and inclusive, in the Northern District of California, and elsewhere, the defendant,

ALFRED J. VILLALOBOS,

and others, including BUENROSTRO, did knowingly and intentionally conspire to commit offenses

against the United States, that is,

> a.     to corruptly give and accept bribes, in violation of Title 18, United States Code,
> Section 666(a)(1)(B) and (a)(2);
>
> b.     to devise and intend to devise a scheme and artifice to defraud the citizens of the
> State of California of their right to the honest services of defendant
> BUENROSTRO, in violation of Title 18, United States Code, Sections 1341,
> 1343, and 1346;

and did knowingly and intentionally conspire with others, including BUENROSTRO, to defraud the

United States through deceit, craft, trickery, and dishonest means for the purpose of attempting to defeat

and obstruct the lawful functions of the SEC, USPIS, and FBI, in the oversight and enforcement of the

laws relating to the offer, sale, and purchase of securities, and other federal criminal laws.

Manner and Means of the Conspiracy

21.     Beginning no later than 2005, during and after BUENROSTRO's tenure as CEO of

CalPERS, VILLALOBOS gave BUENROSTRO and his family, and BUENROSTRO accepted, things

of value, for the purpose of influencing and rewarding BUENROSTRO in connection with the business

of CalPERS, which things of value included the following:

> a.     Approximately $200,000 in United States currency;
>
> b.     Approximately $50,000 delivered via check;
>
> c.     Entertainment, travel, lodging, jewelry, casino chips, and other benefits in kind,

SUPERSEDING INDICTMENT                               6

1          including payment for BUENROSTRO's wedding; and

2          d.    Employment with ARVCO, the benefits of which included approximately $25,000 in salary per month.

3

4     22.     As a result of those benefits, BUENROSTRO acted on behalf of VILLALOBOS and in the interest of VILLALOBOS, in connection with the business of CalPERS, in ways including the

5 following:

6

7          a.    At the request of VILLALOBOS, BUENROSTRO provided him with confidential and proprietary information relating to CalPERS' investment decisions;

8

9          b.    At the request of VILLALOBOS, BUENROSTRO influenced, and attempted to influence, the decisions and operations of CalPERS' Board and employees in favor of persons and entities identified by VILLALOBOS as his current and

10            prospective clients, investment consultants, and other associates;

11          c.    BUENROSTRO knowingly signed documents VILLALOBOS used to create fraudulent Investor Disclosure letters, purportedly documenting disclosures to

12            CalPERS, to ensure ARVCO's receipt of approximately $14 million in commission fees from Apollo.

13

14     23.     BUENROSTRO and VILLALOBOS did conceal and hide, and caused to be concealed and hidden, the acts done and the purpose of acts done in furtherance of the conspiracy, and the objects

15 of the conspiracy, in ways including the following:

16

17          a.    BUENROSTRO and VILLALOBOS agreed on false versions of their corrupt conduct and concealed documents relating to the true facts regarding their corrupt relationship;

18

19          b.    BUENROSTRO and VILLALOBOS concealed from, and misrepresented to, the SEC, the USPIS, and the FBI, as well as the State of California, CalPERS, Apollo, and other private and public litigants interested in the same matters, the

20            true facts concerning their corrupt relationship and the authenticity of the Investor Disclosure letters; and,

21

22          c.    VILLALOBOS directed others to conceal and misrepresent material facts concerning his and ARVCO's relationship to BUENROSTRO and business with CalPERS.

23

24                          Overt Acts

    24.     In furtherance of the conspiracy and to effect the objects thereof, the following

25 overt acts were committed in the Northern District of California and elsewhere:

26          a.    On or about November 2004, VILLALOBOS hosted BUENROSTRO's wedding

27            at VILLALOBOS' home in Nevada and paid for his wedding-related expenses;

28          b.    In or about 2005, VILLALOBOS provided casino chips with redeemable cash value to certain (now former) members of the CalPERS Board and

1      BUENROSTRO's wife, prior to the CalPERS Board considering a proposal from
       a health care company in connection with CalPERS' healthcare benefit program;

2
       c.    In or about 2005, VILLALOBOS paid for BUENROSTRO to stay approximately
3            two nights at Harvey's Resort and Casino in Nevada;

4      d.    In or about 2006, VILLALOBOS paid for BUENROSTRO to stay approximately
             one night at Harrah's Lake Tahoe Resort and Casino in Nevada;

5
       e.    In or about November 2006, VILLALOBOS paid for BUENROSTRO's first class
6            airfare, hotel accommodations, meals, and entertainment as VILLALOBOS
             accompanied BUENROSTRO in his official capacity as CalPERS' CEO to a
7            series of business meetings in Dubai, Hong Kong, and Macau;

8      f.    In or about 2007, VILLALOBOS made, and BUENROSTRO accepted, a series of
             direct cash payments in Sacramento, California, that eventually totaled
9            approximately $200,000;

10     g.    On or about January 2, 2008, VILLALOBOS, BUENROSTRO, and others
             created a backdated Investor Disclosure letter for ARVCO in connection with
11           CalPERS' investment in Fund VII;

12     h.    On or about January 3, 2008, VILLALOBOS caused that Fund VII Investor
             Disclosure letter to be transmitted via interstate carrier from Nevada to New
13           York;

14     i.    On or about January 11, 2008, BUENROSTRO signed, and in some cases dated,
             Investor Disclosure letters that were missing substantive terms;

15
       j.    On or about January 13, 2008, VILLALOBOS and others inserted substantive
16           terms summarizing ARVCO's role in connection with CalPERS' investments in
             AIE, SOMA, and EPF, onto the incomplete Investor Disclosure letters previously
17           signed and dated by BUENROSTRO;

18     k.    On or about January 14, 2008, VILLALOBOS caused the Investor Disclosure
             letters for AIE, SOMA, and EPF, to be transmitted via interstate carrier from
19           California to New York;

20     l.    On or about March 14, 2008, BUENROSTRO transmitted an email in which he
             disclosed the contents of a confidential memorandum from the Chairman of
21           CalPERS' Board to BUENROSTRO and requested VILLALOBOS' input and
             assistance in crafting  BUENROSTRO's response to the Chairman;

22
       m.    On or about June 19, 2008, VILLALOBOS and others inserted substantive terms
23           summarizing ARVCO's role in connection with CalPERS' investment in COF,
             onto an incomplete Investor Disclosure letter previously signed by
24           BUENROSTRO and added the written date of "5/20/08";

25     n.    On or about June 19, 2008, VILLALOBOS caused the COF Investor Disclosure
             letter to be transmitted via interstate carrier from Nevada to New York;

26
       o.    On or about July 1, 2008, VILLALOBOS hired BUENROSTRO to work for
27           ARVCO, initially as a consultant and later as a full-time employee;

28     p.    In or about March 2009, BUENROSTRO, at the request of VILLALOBOS,
             made a campaign contribution in the amount of approximately $2,400 to a

SUPERSEDING INDICTMENT                    8

1    candidate for federal office, and for which BUENROSTRO was subsequently
     reimbursed by VILLALOBOS;

2
     q.    On or about June 16, 2009, ARVCO transmitted via interstate wire transmission a
3          copy of the COF Investor Disclosure letter to Apollo;

4    r.    On or about August 7, 2009, VILLALOBOS transmitted, or caused to be
           transmitted, ARVCO's "Sworn Statement Pursuant to Section 21(a)(1) of the
5          Securities Act of 1934" to the SEC;

6    s.    On or about September 24, 2009, VILLALOBOS executed, under penalty of
           perjury, ARVCO's "Supplemental Sworn Statement Pursuant to Section 21(a)(1)
7          of the Securities Act of 1934";

8    t.    On or about September 25, 2009, VILLALOBOS transmitted, or caused to be
           transmitted, ARVCO's "Supplemental Sworn Statement Pursuant to Section
9          21(a)(1) of the Securities Act of 1934" to the SEC;

10   u.    On or about April 14, 2010, VILLALOBOS made, and BUENROSTRO accepted,
           a check in the approximate amount of $50,000 in connection with a promissory
11         note intended to conceal the true nature of their financial relationship;

12   v.    On or about December 27, 2010, BUENROSTRO falsely answered certain
           questions under oath in a deposition in the civil action of *People v. Villalobos et*
13         *al.*, (Los Angeles County Superior Court, SC 107850), regarding his financial
           relationship with VILLALOBOS and his role in, and knowledge of, the creation,
14         execution and transmittal of the fraudulent Investor Disclosure letters;

15   w.    On or about November 28, 2011, VILLALOBOS executed a written response to
           the SEC's "Wells" notice in which he, among other things,

16
                 (1)   adopted BUENROSTRO's prior false statements from the
17                     December 2010 deposition about the Investor Disclosure letters;
                       and,
18               (2)   falsely represented and concealed his role in the creation,
                       execution, and transmittal of the fraudulent Investor Disclosure
19                     letters;

20   x.    On or about February 3, 2012, BUENROSTRO participated in a voluntary
           interview with the SEC, the USPIS, and the FBI, in which he falsely represented,
21         among other things,

22               (1)   his financial relationship with VILLALOBOS;
                 (2)   he had never signed any Investor Disclosure letters that were
23                     missing substantive terms;
                 (3)   he did not backdate any Investor Disclosure letters; and,
24               (4)   he had signed two original copies of complete Investor Disclosure
                       letters for Fund VII, SOMA, AIE, EPF, and COF, whereupon he
25                     had provided one original to ARVCO and submitted the second
                       original to CalPERS' intra-office mail for filing in CalPERS'
26                     investment files;

27   y.    On or about November 7, 2012, VILLALOBOS falsely answered certain
           questions under oath in a deposition in the civil action of *People v. Villalobos et*
28         *al.*, (Los Angeles County Superior Court, SC 107850), regarding his financial
           relationship with BUENROSTRO and his role in, and knowledge of, the creation,

1    execution, and transmittal of the fraudulent Investor Disclosure letters;

2    z.    On or about November 8, 2012, VILLALOBOS falsely answered certain
            questions under oath in a deposition in the civil action of *People v. Villalobos et*
3           *al.*, (Los Angeles County Superior Court, SC 107850), regarding his financial
            relationship with BUENROSTRO and his role in, and knowledge of, the creation,
4           execution, and transmittal of the fraudulent Investor Disclosure letters;

5    aa.   On or about November 9, 2012, VILLALOBOS falsely answered certain
            questions under oath in a deposition in the civil action of *People v. Villalobos et*
6           *al.*, (Los Angeles County Superior Court, SC 107850), regarding his financial
            relationship with BUENROSTRO and his role in, and knowledge of, the creation,
7           execution, and transmittal of the fraudulent Investor Disclosure letters;

8    bb.   On or about November 19, 2012, VILLALOBOS falsely answered certain
            questions under oath in a deposition in the civil action of *People v. Villalobos et*
9           *al.*, (Los Angeles County Superior Court, SC 107850), regarding his financial
            relationship with BUENROSTRO and his role in, and knowledge of, the creation,
10          execution, and transmittal of the fraudulent Investor Disclosure letters;

11   cc.   On or about June 6, 2013, VILLALOBOS falsely answered certain questions
            under oath in a deposition in the civil action of *Villalobos v. Apollo, et al.*, (United
12          States Bankruptcy Court, in and for the District of Nevada, No. 3:10-BK-52248-
            GWZ; 3:13-AP-5017-GWZ), regarding his financial relationship with
13          BUENROSTRO and his role in, and knowledge of, the creation, execution, and
            transmittal of the fraudulent Investor Disclosure letters;
14
     dd.   On or about June 26, 2013, VILLALOBOS falsely answered certain questions
15          under oath in a deposition in the civil action of *Villalobos v. Apollo, et al.*, (United
            States Bankruptcy Court, in and for the District of Nevada, No. 3:10-BK-52248-
16          GWZ; 3:13-AP-5017-GWZ) regarding his financial relationship with
            BUENROSTRO and his role in, and knowledge of, the creation, execution, and
17          transmittal of the fraudulent Investor Disclosure letters;

18   ee.   On or about December 10, 2013, VILLALOBOS falsely answered certain
            questions under oath in a deposition in the civil action of *Villalobos v. Apollo, et*
19          *al.*, (United States Bankruptcy Court, in and for the District of Nevada, No. 3:10-
            BK-52248-GWZ; 3:13-AP-5017-GWZ) regarding his financial relationship with
20          BUENROSTRO and his role in, and knowledge of, the creation, execution, and
            transmittal of the fraudulent Investor Disclosure letters; and,
21
     ff.   On or about December 11, 2013, VILLALOBOS falsely answered certain
22          questions under oath in a deposition in the civil action of *Villalobos v. Apollo, et*
            *al.*, (United States Bankruptcy Court, in and for the District of Nevada, No. 3:10-
23          BK-52248-GWZ; 3:13-AP-5017-GWZ) regarding his financial relationship with
            BUENROSTRO and his role in, and knowledge of, the creation, execution, and
24          transmittal of the fraudulent Investor Disclosure letters.

25   All in violation of Title 18, United States Code, Section 371.

26   COUNT TWO: (18 U.S.C. § 1001(a)(1) – False Scheme Against the United States)

27   25.   Paragraphs 1 through 19 and 21 through 24 are realleged and incorporated as if

28

SUPERSEDING INDICTMENT                    10

1  set forth fully herein.

2      26.   From in or about and between January 2008 and December 2013, both dates being

3  approximate and inclusive, in the Northern District of California, and elsewhere, the defendant,

4                              ALFRED J. VILLALOBOS,

5  and others, including BUENROSTRO, did knowingly and willfully falsify, conceal, and cover up by

6  trick, scheme, or device material facts, specifically facts about the financial relationship between

7  VILLALOBOS and BUENROSTRO and how they created, executed, and transmitted the Investor

8  Disclosure letters relating to CalPERS' investment in Apollo-managed funds, in a matter within the

9  jurisdiction of the SEC, the USPIS, and the FBI, all agencies of the executive branch of the United

10  States.

11      All in violation of 18 U.S.C. § 1001(a)(1).

12  COUNT THREE: (18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud and Wire Fraud)

13      27.   Paragraphs 1 through 19 and 21 through 24 are realleged and incorporated as if

14  set forth fully herein.

15      28.   From in or about and between January 2008 and December 2013, both dates

16  being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

17                              ALFRED J. VILLALOBOS,

18  did knowingly and intentionally attempt and conspire with other persons known and unknown to the

19  grand jury, including BUENROSTRO, to commit offenses against the United States, specifically, mail

20  fraud and wire fraud, in connection with the Investor Disclosure letters for CalPERS' investment in

21  Fund VII, AIE, SOMA, EPF, and COF, in violation of Title 18, United States Code, Sections 1341 and

22  1343.

23      All in violation of Title 18, United States Code, Section 1349.

24  FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 –

25                          Forfeiture of Fraud Proceeds

26      29.   The allegations of Counts One through Three of this Superseding Indictment are re-

27  alleged and incorporated herein pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §

28  2461(c).

SUPERSEDING INDICTMENT                    11

1      30.     Upon a conviction for Count One and/or Three, alleged above, the defendant,

2                                           ALFRED J. VILLALOBOS,

3 shall forfeit to the United States any property, real or personal, which constitutes or is derived from

4 proceeds traceable to said offense, including but not limited to a sum of money equal to the total

5 proceeds from the commission of said offense.

6      31.     If, as a result of any act or omission of the defendants, any of said property

7              a.     cannot be located upon the exercise of due diligence;

8              b.     has been transferred or sold to or deposited with, a third person;

9              c.     has been placed beyond the jurisdiction of the Court;

10             d.     has been substantially diminished in value; or

11             e.     has been commingled with other property which cannot be divided without

12                    difficulty;

13 any and all interest defendants have in any other property up to the value of the property described in

14 paragraphs 21 and 22 above, shall be forfeited to the United States pursuant to 21 U.S.C. § 853(p), as

15 incorporated by 28 U.S.C. § 2461.

16      All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1343, 1349; Title 28,

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1   United States Code, Section 2461; and Rule 32.2 of the Federal Rules of Criminal Procedure.

2   DATED: _August 7, 2014_                              A TRUE BILL

3

4                                                        _Nancy J. Reterson_
                                                         FOREPERSON

5
    MELINDA HAAG
6   United States Attorney

7

8

9   J. DOUGLAS WILSON
    Chief, Criminal Division
10

11

12
    Approved as to form:
13

14

15

16  TIMOTHY J. LUCEY
    PHILIP A. GUENTERT
17  Assistant United States Attorneys

18

19

20

21

22

23

24

25

26

27

28

    SUPERSEDING INDICTMENT                    13